[S. F. No. 1573.    In Bank.—June 25, 1900.]

PAULINE WESTERFELD et al., Executors of Will of William Westerfeld, Deceased, Respondents, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

LIFE INSURANCE—SETTLEMENT OF DISPUTED POLICY — REPUDIATION FOR FRAUD—ACTION FOR RESIDUE—CONTRACT—TORT.—An action by the executors of the will of a deceased person to recover the residue of a policy of life insurance, a dispute concerning which had been settled for a little over one-fourth of the policy, in which the complaint avers that plaintiff, before bringing the action, notified defendant that they "repudiated said settlement upon the ground that it was procured by fraud," consisting of certain false representations, and demanded payment of the residue of the policy, must be regarded as founded upon the policy as a subsisting contract, and cannot be considered as an action in tort for damages for deceit for the fraud charged.

ID.—SETTLEMENT AND RELEASE NOT VOID — RESCISSION.—The action cannot be sustained upon the theory that the settlement and release can be treated as void for the alleged fraud. This is contrary to the rule of our statute, which provides in section 1566 of the Civil Code that a consent to a contract procured by fraud "is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by the chapter on rescission."

ID.—ELECTION OF REMEDY—RESCISSION—DAMAGES.—One who has been defrauded by a contract of settlement may elect either to rescind and restore what he received, and recover what he was induced to part with, or to affirm the contract and sue for damages for the fraud. But he cannot have both remedies; and, if there has been a rescission, an action for damages cannot be sustained.

ID.—SETTLEMENT OF DISPUTED CONTRACT—DAMAGES FOR FRAUD.—Where a disputed claim under a contract is settled by the parties thereto, the measure of damages for fraud in inducing the settlement is not necessarily the extinguished balance of the claim, but indemnity for the real loss sustained, in view of the uncertainties and expense of expected litigation, unless for special reasons exemplary damages may be awarded. The indemnity merely may be much less than the contract balance.

ID.—RESTITUTION UPON RESCISSION—OFFER BEFORE SUIT.—Where money is received upon the settlement of a disputed claim, and it cannot be affirmed beforehand with certainty that, as the result of litigation, the plaintiff would surely be entitled to recover as much as or more than he received upon the settlement, the

restitution of what he received upon rescission of the contract for fraud, and the offer of such restitution before suit brought, is a necessary condition precedent to maintaining an action upon the original demand.

ID.—RIGHT OF ACTION—BAR OF EXISTING COMPROMISE.—A right of action must exist in the plaintiff when the action is commenced, and, where there is then an unrescinded existing compromise, it is binding when the suit is commenced, and is a bar thereto, which is not removed by verdict or judgment.

ID.—VARIANCE—OBJECTIONS—EXCEPTIONS—MOTION FOR NONSUIT.—If it were permissible to allow a judgment for the plaintiff for the full amount of the policy to stand upon a theory of the complaint which is at variance with its allegations, for the reason that it may be substantially just, such judgment cannot be permitted to stand, when the allegations made are not sustained, and objections were raised and exceptions taken to the rulings of the court throughout the case, and a motion for a nonsuit was made upon that ground, and erroneously denied.

ID.—REPRESENTATIONS NOT FRAUDULENT. — Representations that the policy in question was never delivered to the decedent, and that it was merely submitted to him for examination to be finally delivered if he approved of it, and paid the premium, which he did not do, are not fraudulent, where the testimony shows that there was no binding delivery of the policy, as an executed contract, and that the deceased did not accept it as delivered, and did not indicate that he was satisfied with it, and did not pay the premium.

ID.—UNAUTHORIZED AGREEMENT OF LOCAL AGENT—CASH SURRENDER VALUE OF OLD POLICY—CONCEALMENT BY COMPANY NOT FRAUDULENT.—An unauthorized agreement between a local agent and the deceased that the cash surrender value of an old policy, which the deceased had before expressly refused to keep up, and which, according to its terms, then had no surrender value, and could not be modified by any other officer than the president, vice-president, or actuary of the company, should be applied toward payment of premiums on the new policy, the amount thereof to be ascertained by the company, cannot bind the company to allow any surrender value, or estop it from insisting upon the terms of the new policy as to payment of first premium; and a concealment by the company of such unauthorized agreement at the time of the settlement of the policy with the executors of the deceased was not fraudulent.

ID.—NONPAYMENT OF FIRST PREMIUM—ABSENCE OF LIABILITY.—An insurance company is not liable upon a policy delivered by a local agent, where the first premium is not only not paid, but there is an entire absence of liability on account of the premium, and the policy holder cannot be compelled to pay it.

ID.—KNOWLEDGE OF AGENT, WHEN NOT AFFECTING PRINCIPAL.—The knowledge of an agent is not knowledge of the principal in respect of matters not within the scope of the agent's authority.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court in Bank, and in the opinion rendered in Department Two.

Page, McCutchen & Eells, for Appellant.

There could be no rescission of the settlement by way of compromise of the disputed policy, without restitution of the money received under it, and an offer thereof must be made before suit on the policy could be maintained. (Civ. Code, secs. 1521-23, 1541, 1566, 1567, 1689, 1691; *Herman v. Haffenegger*, 54 Cal. 161; *Hammond v. Wallace*, 85 Cal. 522, 532[1]; *Kelley v. Owens*, 120 Cal. 502; *Dobinson v. McDonald*, 92 Cal. 33; *Jurgens v. New York Life Ins. Co.*, 114 Cal. 161; *Buena Vista etc. Co. v. Tuohy*, 107 Cal. 243; *Bank v. Wickersham*, 99 Cal. 655; *Gould v. Bank*, 86 N. Y. 75; *Brown v. Hartford Fire Ins. Co.*, 117 Mass. 479; *Moore v. Massachusetts Ben. Ass'n*, 165 Mass. 517; *Bisbee v. Ham*, 47 Me. 543; *Potter v. Monmouth Ins. Co.*, 63 Me. 440; *Farnsworth v. Whitney*, 74 Me. 370; *Home Ins. Co. v. Howard*, 111 Ind. 544; *Pangborn v. Continental Ins. Co.*, 67 Mich. 683; *Morris v. Great Northern Ry. Co.*, 67 Minn. 74; *East Tennessee etc. Ry. Co. v. Hayes*, 83 Ga. 558; *Och v. Missouri etc. Ry. Co.*, 130 Mo. 37; *Harkey v. Mechanics' etc. Ins. Co.*, 62 Ark. 274.[2]) The measure of damages for fraud in procuring the settlement of a disputed claim is not the contract balance. (*Gould v. Cayuga Bank*, 99 N. Y. 333, 339.) Westerfeld was put upon notice of the terms of his old policy. (*New York Life Ins. Co. v. McMaster*, 87 Fed. Rep. 63, 67.) There was no fraud in the settlement. The unauthorized agreement to apply cash surrender value was not binding upon the company, and the acceptance of the new policy being conditional, it was not binding upon Westerfeld. (*Harnickell v.*

---

[1] 20 Am. St. Rep. 239.

[2] 54 Am St. Rep. 295.

*New York Life Ins. Co.*, 111 N. Y. 390.)  One party cannot be bound if the other is not.  Westerfeld's executors could not give a void policy any binding effect.  (*P. & A. L. Ins. Co. v. Ewing*, 92 U. S. 377; *Giddings v. North Western Mut. L. Ins. Co.*, 102 U. S. 108.)

Van Ness & Redman, for Respondents.

The policy took effect upon its delivery.  (*Farnum v. Phoenix Ins. Co.*, 83 Cal. 246[3]; *Griffith v. New York Life Ins. Co.*, 101 Cal. 627[4]; *Berliner v. Travelers' Ins. Co.*, 121 Cal. 451.)  The action is substantially to recover the detriment caused by the fraud which induced the settlement.  Plaintiff has stated the facts which in law constitute his damage, and is entitled to recover it.  (*Bartlett v. Bank*, 79 Cal. 218[5]; *Riser v. Walton*, 78 Cal. 490; *Loeb v. Kamak*, 1 Mont. 152; *Weaver v. Mississippi etc. Co.*, 28 Minn. 542; *Raymond v. Traffarn*, 12 Abb. Pr. 52; *Connoss v. Meir*, 2 E. D. Smith, 314.)  The plaintiff was entitled to keep what he had, and claim damages for the fraud. (*Gould v. Bank*, 86 N. Y. 75.)  The measure of damages is the amount shown to be due.  (*Walsh v. Sisson*, 49 Mich. 423; *Clews v. Traer*, 57 Iowa, 459; *Mallory v. Leach*, 35 Vt. 156[6]; *Sibley v. Hulbert*, 15 Gray, 509.)  A preliminary tender was not required, when the facts show that it would have been rejected. (*Girard v. St. Louis etc. Co.*, 123 Mo. 358[7]; *Sandford v. Royal Ins. Co.*, 11 Wash. 653.)  A party is not required to tender that which he is entitled to retain.  (*Watts v. White*, 13 Cal. 321; *Kley v. Healy*, 127 N. Y. 555; *Richards v. Fraser*, 122 Cal. 456, 461; *Gilson etc. Co. v. Gilson*, 47 Cal. 597; *Allerton v. Allerton*, 50 N. Y. 670; *Harris v. Equitable Life Assur. Co.*, 64 N. Y. 196; *Fisher v. Bishop*, 108 N. Y. 25[8]; *Berry v. American etc. Ins. Co.*, 132 N. Y. 49[9]; *Reynolds v. Westchester Fire Ins. Co.*, 40 N. Y. Supp. 336; *Sheanon v. Pacific Mut. etc. Ins. Co.*, 83 Wis. 507; *O'Brien v. Chicago etc. Ry. Co.*, 89 Iowa, 644; *Springfield etc. Ins. Co. v. Hull*, 51 Ohio St. 270[10]; *Metropolitan R. R. Co. v. Manhattan R. R. Co.*, 11 Daly, 373, 451; *Pierce v. Wood*, 23 N. H. 519, 531; *Judge of Probate v. Stone*, 44 N. H. 593, 608.)

---

[3] 17 Am. St. Rep. 233.

[4] 40 Am. St. Rep. 96.

[5] 12 Am. St. Rep. 139.

[6] 82 Am. Dec. 625.

[7] 45 Am. St. Rep. 556.

[8] 2 Am. St. Rep. 357.

[9] 28 Am. St. Rep. 548.

[10] 46 Am. St. Rep. 571.

A suit in equity lies for rescission without previous offer of rescission. (*Gould v. Bank, supra; Watts v. White, supra; Day v. Mooney,* 3 Okla. 608; *Brown v. Norman,* 65 Miss. 369[11]; *Neblett v. MacFarland,* 92 U. S. 101; *Martin v. Martin,* 35 Ala. 560; *Shuee v. Shuee,* 100 Ind. 477; *Thackrah v. Haas,* 119 U. S. 499; *Thomas v. Beals,* 154 Mass. 51; *Knappen v. Freeman,* 47 Minn. 491; *Maloy v. Berkin,* 11 Mont. 138.)

TEMPLE, J.—This case was decided in Department, the opinion being written by Mr. Commissioner Britt. A rehearing was granted solely because it was thought by some members of the court that the complaint stated a cause of action for damages for deceit—it having been held in the Department opinion that it did not. Upon mature consideration we think the decision rendered in Department is right, and the opinion is adopted as the opinion of the court in Bank, except as it may be deemed to have been qualified by this opinion.

Counsel for respondent contend that the court in Department took too narrow a view in its construction of the allegation that the plaintiffs "repudiated said settlement upon the ground that it was procured by fraud on the part of defendant." They say the allegation is but the statement of one of the facts constituting their cause of action. If this be so, evidently they have no action for damages. An action for damages will not lie because of such repudiation. The action for deceit is based upon the proposition that they were induced by fraud to release and surrender their original demand. If they repudiate such release they cannot claim that they were damaged by being induced by fraud to release, for they have not released. We do not agree that by bringing a suit for damages by a proper complaint plaintiffs would thereby repudiate the settlement which they were by deceit induced to make. They would affirm the settlement and aver in effect that it was not as good a settlement as they were entitled to, and that they were deceived into making it by the fraud of defendant, and their damage would be what they lost through such deceit. If the settlement does not stand they have not been damaged. It was through making the unfortunate settlement that they suffered damage.

[11] 7 Am. St. Rep. 663.

One who has been so defrauded has his choice of two remedies: He may rescind, and recover that which he was induced to part with. If he does this, evidently the wrong done him has been righted, or usually would be. It may chance, however, that when he discovers the fraud he cannot rescind, or that rescission would not fully compensate his loss. He may therefore decline to restore what he received in the settlement or other contract he was induced by fraud to enter into, and, affirming the contract, sue for damages. But he cannot retain what he received and recover what he parted with. If he wishes to recover that, he must promptly offer to restore what he received and demand a rescission. This is the requirement of the code.

Counsel further contend that if this allegation is thought inconsistent with the view that the action is for damages, then it might be regarded as surplusage. They say they attempted to state in the complaint "all the facts, and expected to recover upon those facts upon any theory permissible. But we insist that even although the intention had been to sue upon the policy, treating the release as void because of the fraud, we can still recover in an action for damages, if, upon the facts stated, the law permits a recovery of damages."

The allegation under criticism is a very imperfect averment of a statutory rescission, yet it clearly implies that such rescission has been made. Conceding that the other facts stated would justify and sustain a judgment for damages, yet if there has been a rescission the action for damages cannot be sustained.

But if the plaintiffs are entirely wrong in their legal theory, and have brought and tried their case, not as an action for damages, but upon the policy, claiming that the compromise is void, giving credit for the amount received in the compromise as so much paid on account, as plaintiffs have, when they should have affirmed the contract and sued for damages, has the defendant been injured by the mistaken form of the action? It is contended that the case of the plaintiffs, so far as concerns the important matters of the controversy, is the same as it would have been. It is so, except that some further matters in regard to a rescission would have been brought in. The defense, except as to what might have been said about rescission, is the same. The rule as to the recovery is the same

if we accept the rule of damages contended for by the respondents. Their contention is that in cases of this character, where a creditor has been induced by fraud to accept less than was due, even when the whole demand is disputed, the damage is the difference between what he was induced to accept as full payment and what was really due.

I think, however, the rule is correctly stated in the Department opinion. It applies to other contracts than those of this character as well. In some possible cases to recover what one has been induced to part with by fraud would not be full compensation, and at all events such a plaintiff is only entitled to be indemnified, unless for special reasons exemplary damages may be awarded. But if it were permissible to allow a judgment to stand, because we can see that substantial justice has been done, when it appears that the plaintiff did not establish the case stated in his complaint, but some other which he might have stated, it cannot be done here, for objection was made and exception taken at every step in the progress of the case and a motion for a nonsuit was made upon this very ground, and the ruling denying it is assigned as error.

But I think the judgment and order must be reversed for another reason. The facts proven do not show fraud, and plaintiffs could not recover in any form of action. The alleged fraud consisted in an affirmative representation that the policy had never been delivered to Westerfeld, but was merely submitted to him for examination, to be finally delivered if he approved of it and paid the first premium, and that he never signified his approval and did not pay the first annual premium; and also in concealing the fact that it was agreed between Westerfeld and the corporation that Westerfeld should be allowed a surrender value upon his first policy, which should be applied and received in payment of the first premium upon the second policy. And, further, that Westerfeld was given time in which to pay such first annual premium until such surrender value had been fixed by the defendant, and that no surrender value had been fixed up to the time of Westerfeld's death.

If the facts which it was alleged defendant concealed had any existence, then the affirmative representations charged upon defendant were false. Plaintiffs proved the falsity of the representations by the uncorroborated evidence of Todhunter,

a former employee of defendant. He testified, in effect, that Westerfeld was dissatisfied with his first policy and threatened to make trouble for the company, which he charged had cheated him. Thereupon Westerfeld was induced by Hawes, general manager of the defendant, acting through Todhunter, to take out a new policy, upon the consideration that he would be allowed a surrender value upon the first policy which would about pay the first premium. It is, in effect, so stated in the complaint, although, in accordance with the admitted design to have such pleadings as could support any legal theory, it is not expressly stated that the acceptance of the new policy was so conditioned. The evidence of Todhunter plainly shows that only upon this promise did Westerfeld consent to accept the new policy. All the negotiations were through Todhunter, and he testified that he reported to Colonel Hawes that Westerfeld would be satisfied with the new policy "if he could determine the cash surrender value of the first," and that Hawes promised to refer that matter to the home office. Further, that Westerfeld wanted to know what the cash surrender value would be, and was told by Todhunter that it would be about eight hundred dollars. At the time he received the application he says: "It was understood that, if the cash surrender value of the first contract fell short of the premium required to pay the second, he would have to pay the difference, and if there was any overplus the company would give him the difference. I told him that. I do not recall exactly what he said, except that he gave me the application." And when the policy was delivered he told Westerfeld that there was nothing further to do with reference to the delivery except applying the surrender value of the first. And afterward when Todhunter received a note from the manager calling his attention to the outstanding policy and saying it must receive immediate attention, he, as he testified, called upon Hawes and reminded him of the arrangement, and that "Westerfeld was not called upon to pay the premium until the surrender value of the first contract was obtained from New York." The only other testimony in regard to delivery was given by Mr. More, who testified that at the request of Todhunter he handed the policy to Westerfeld, who remarked: "I am not to settle for this until I submit this to my friend." According to this testimony Wester-

feld did not accept the policy as delivered, and there is no evidence which tends to prove that after this Westerfeld ever indicated that he was satisfied with it. This certainly does not show a delivery which would bind anyone. It counts for nothing if in fact, as respondent contends, the policy was such as Westerfeld contracted for. He refused to accept it until he was satisfied upon this subject.

Upon this point, therefore, there was no evidence to sustain the verdict except that of Todhunter, from which it clearly appears that Westerfeld took the new policy, if he did accept it, upon the representation that a surrender value would be paid upon the first policy, and, of course, had the company refused to allow such value, he could not by the corporation be held for the annual premium.

The policy as issued to Westerfeld in 1890, called the first policy, contained these provisions:

"No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, to issue a permit for residence, travel, or occupation, or to bind the company by making any promise or receiving any representation or information. This power can be exercised only by the president, vice-president, or actuary of the company, and will not be delegated. . . . .

"Surplus will be apportioned to this policy only at the expiration of each period of five years from the date of the commencement of the insurance, and then if this policy is in force. . . . .

"This policy may be surrendered to the company at the expiration of the first or of any subsequent five-year period, upon thirty days' previous written notice. At the expiration of the first period eighty per cent of its reserve (computed as hereinbefore specified), and in addition thereto the surplus then apportioned, will be allowed as a surrender value. At the end of any subsequent period the entire reserve (computed as hereinbefore specified), and in addition thereto the surplus then apportioned, will be allowed. The above cash values will not be allowed for a surrender at any other time."

Before taking the second policy, as alleged, Westerfeld had most persistently refused to pay "another single cent" upon the

first policy. He was not, therefore, prevented from paying by the negotiations in regard to the second. He was presumed to know the conditions of the policy, and, in fact, had given it a careful examination, as is shown by his complaints. He knew, therefore, that the first policy had no surrender value whatever, and that its terms could not be modified by any officer of the corporation except the president, the vice-president, or actuary. Hawes was not one of the officers mentioned. Indeed, it is not shown even by Todhunter's testimony that such modification was agreed to by Hawes, but only that he promised to apply to the home office to have them do it, if possible, and nothing further was done in the matter either by the home office or by Hawes. But granting that Hawes promised that such modification would be made, and that the policy was delivered upon such promise, is the defendant bound by it? Respondents argue that it was not a modification of the first policy, but only an agreement as to the mode of paying a premium on the second. But that is not the case. The second policy was accepted in consideration of a promise to modify the terms of the first policy and allow a surrender value therefor—contrary to the stipulations contained in it.

But it is contended that the company is estopped to deny the authority of Hawes; that, having delivered the policy without express condition, it is bound thereby. Upon the uncontradicted testimony the court should have found that the policy was not delivered as an executed contract. But there was no estoppel upon any view. Westerfeld had notice of the want of authority, and also that Hawes made no claim to such authority. It is not a case where the corporation has been paid to carry a risk and is now attempting to escape liability. Westerfeld did not pay the first premium, and could not have been compelled to do so. Cases holding that when an agent gives credit in violation of his authority, and delivers the policy, the company is bound, do not go far enough for plaintiffs. They do not hold that the company shall be bound, though the premium is not to be paid and there is no liability on account of it. (*Harnickell v. New York Life Ins. Co.*, 111 N. Y. 390; *Insurance Co. v. Ewing*, 92 U. S. 377; *Giddings v. Insurance Co.*, 102 U. S. 108.)   *Farnum v. Phoenix Ins. Co.*,

83 Cal. 246,[12] is much relied upon by respondents. It was there held that the promise to pay on the part of the insured was a sufficient consideration for the contract, and that a local agent having authority to solicit business and make contracts of insurance, to countersign and deliver policies, binds his principal within the general scope of his apparent authority, notwithstanding an actual excess of authority. Any fact known to such agent which could constitute a breach of a condition and make the contract void, at the option of the company, from its inception, will be considered waived. The company cannot, in general, receive through its agents pay for carrying a risk, and be able when loss occurs to avoid liability by taking advantage of a limitation upon the authority of the agent. Here this state of things did not exist. It had not been paid to carry the risk, and could not have enforced payment. In the Farnum case the difference in the construction of limitations upon the power of agents in entering into contracts of insurance, and in modifying them afterward, is recognized.

It is also said that whether a particular agent has power to waive conditions is a question of fact. Plaintiffs offered no evidence as to the authority of Hawes except the policy, which expressly denied to him the authority to modify the contract. The burden was upon plaintiffs. The title "general manager," for a specified territory, does not establish the particular authority required, especially after this express limitation, which was known to the insured.

Respondent also relies upon a class of cases like *Kahn v. Traders' etc. Co.*, 4 Wyo. 419.[13] In that case it was held that consent to additional insurance given by an authorized agent, upon which the insured acts, will bind the company, although not indorsed upon the policy as required, although the authority of the agent was expressly limited to that mode. The reasons given are that the company had notice of the additional insurance—notice to the agent being notice to the company—and should have promptly notified the insured, if it did not consent, and also that it could not so tie its hands or that of its agents. The transaction was one which the agent was fully authorized to make, and the insured had done everything which

[12] 17 Am. St. Rep. 233.
[13] 62 Am. St. Rep. 47.

ordinarily he would be required to do. But the company required, in addition, that for its protection he should see that the agent executed his undoubted authority in a certain mode. There are numerous authorities upon the subject and the matter is extensively discussed in the text-books. The majority of cases seem to be against the position taken in that case, but it is said that the present trend is in favor of the rule there declared. It is also said in that case, and numerous other cases with like conflict, that an adjuster can bind the company for whom he acts by his declaration that proofs furnished are sufficient, notwithstanding provision in the policy to the contrary. If this means that the company is bound unless it promptly gives notice that it is not satisfied, and in time to enable the insured to make his proof, it is clearly right and in accord with rules applicable alike to other transactions. But I see nothing in these decisions applicable to this case. Knowledge of the agent is not knowledge of the principal in matters not within the scope of the agent's authority. I see nothing unfair in such a limitation upon the authority of an agent as to matters involved here. To make such modifications of the contract is not usually expected of an agent, and the power to do so is not implied in what may be called his usual ostensible authority.

It may be remarked that, as the correctness of the order refusing a nonsuit is involved on this appeal, we are not hampered by anything the court found or failed to find. Plaintiff's case was not strengthened by evidence after the ruling on the motion for a nonsuit was made.

The judgment and order are reversed.

McFarland, J., Harrison, J., Van Dyke, J., and Henshaw, J., concurred.

The following is the opinion rendered in Department Two, August 1, 1899:

BRITT, C.—Plaintiffs sue as executors of the last will of one William Westerfeld, late of the city of San Francisco. Defendant is an insurance corporation of the state of New York. Plaintiffs allege in their complaint, among other things, that on April 19, 1890, the defendant issued to their testator a policy

of insurance upon his life in the sum of ten thousand dollars, which policy included a provision that at the expiration of five years from its date the insured might surrender the policy and receive its "then cash value"; that after Westerfeld had paid four annual premiums thereon an arrangement was effected between him and the defendant whereby the latter executed to him a new policy of date February 19, 1894, for the same amount as the former but on a different plan, and promised that it would compute the surrender value, in cash, of said first issued policy and apply the surplus thereof above the fifth premium, to become due the following April, in payment of premiums on said second policy, Westerfeld agreeing on his part to give up the first policy as soon as the company should have determined its value as aforesaid and given him credit therefor on its books; that Westerfeld died February 18, 1895, having yet in his possession both said policies, and having received from defendant no notice of the cash surrender value of the first policy, which, however, was a sum more than sufficient, after deducting the fifth premium on the first policy, to pay the first premium on the second.

Plaintiffs further allege that as executors aforesaid they afterward demanded of defendant the payment of the amount of said second policy; that defendant refused to pay any part thereof, and by false and fraudulent representations—to the general effect that the policy of February, 1894, never was in force, but had been delivered to Westerfeld for examination only, that he never accepted it nor paid any premium thereon, and had been notified to return it to defendant; also that the first policy had become void by failure of Westerfeld to pay the fifth annual premium—the defendant inveigled plaintiffs into a compromise whereby they surrendered both said policies and gave a release of all demands thereunder in consideration of the sum of two thousand six hundred and sixty-six dollars and sixty-six cents then paid to them by defendant. That but for the said representations, the falsity of which was then unknown to plaintiffs, they would not have accepted less than the face of the last policy, and that prior to the commencement of this action plaintiffs notified defendant that they "repudiated said settlement upon the ground that it was procured by fraud," and demanded payment of the difference between the sum paid as

just mentioned "and the amount due them under the terms of said policy issued February 19, 1894." The prayer of the complaint was for judgment in the sum of seven thousand three hundred and thirty-three dollars and thirty-three cents, and interest from March 27, 1895, the date of proofs of death.

For defense to the action defendant admitted making the representations alleged by plaintiffs, but denied their falsity and averred that they were true; it contested its liability on the policy of 1894, and claimed that if its local agents (with whom alone Westerfeld dealt) made any arrangement looking to the application of a surrender value of the first policy in payment of premiums on the second, they violated the provisions of the first policy, which allowed a surrender value to the same only after it had been in force for five years, and exceeded their powers, and that their acts were never ratified. Defendant also contended that plaintiffs could not maintain the action without rescinding the contract of compromise and restoring or offering to restore the money they then received as the fruit thereof. The trial was by jury and resulted in a verdict and judgment for plaintiffs for the sum demanded in their complaint.

The decision of but one of the several questions debated by counsel will suffice for the disposition of the case. Notwithstanding the elaborate and very able argument with which plaintiffs' counsel have supported their contention that no restoration or offer of restoration of the money received by their clients upon the compromise was necessary to the success of this action, we are unable to accept that view.

It is said in the first place that the action is to be treated, not as founded on the policy, but as in tort for deceit and to recover damages for the fraud practiced by defendant. The complaint, however, was not drawn upon that theory. It is, of course, true that a party who has been led by fraud into a settlement whereby he accepted less than is justly due him in extinguishment of legal claims may, on discovering the fraud, sue for the damage he has sustained without taking any steps to rescind the settlement; the law allows such an action, although, as has been said here, "Even in that case great wrong is sometimes done when rescission is not required" (*Bancroft v. Bancroft,* 110 Cal. 379); but it proceeds on the assumption

that the plaintiff affirms the contract of compromise—abandons the cause of action which it superseded—and claims damage for the fraud which induced the new contract. In the present instance the plaintiffs distinctly aver in their complaint that they "repudiated said settlement upon the ground that it was procured by fraud upon the part of defendant," and demanded payment of the difference between the sum they had received and the "amount due them under the terms of said policy issued February 19, 1894." The frame of the complaint shows that the action is bottomed on the policy itself as a subsisting contract, and that in consequence of the fraud charged the release is treated as simply void. This is contrary to the rule of our statute; a consent to a contract procured by fraud "is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by the chapter on rescission." (Civ. Code, sec. 1566.) The like view of the plaintiffs' cause of action was submitted to the jury at the trial. The court instructed them in substance that if they believed the averments of the complaint to be true their verdict should be for plaintiffs—not for such amount of damage as they might find to have been caused by the alleged fraud—but "in the sum of seven thousand three hundred and thirty-three dollars and thirty-three cents, with interest thereon from March 27, 1895, at seven per cent per annum," which was the exact amount of the policy less the compromise payment, with interest on the difference. Plaintiffs maintain that this statement of the measure of damages was appropriate to an action sounding in tort for the fraud, but it seems to us to proceed on an unwarranted assumption, viz., that the jury must necessarily find that plaintiffs sustained the same damage by release of the policy on which defendant denied any liability, and which might have been the subject of possibly doubtful litigation, that they would have sustained if the policy had been wholly undisputed. There was evidence in the case from which the jury might have concluded that, without regard to the false representations, plaintiffs could better afford to accept less than the face of the policy than to sue on it; but the instruction took this question from their consideration, and so was not a correct statement of the law if the case is to be regarded as in tort. This subject has been considered by the court of appeals

of New York in an action for obtaining by fraud a compromise of a disputed contractual liability.  The court said that the measure of damages "is not the extinguished balance, and cannot be without making the rule as to rescission an idle and useless formality, [but] its measure is indemnity for the real loss sustained, which may very well prove to be less, and even much less, than the contract balance. . . . . What the plaintiff sold and what the defendant bought [the court thus describing the effect of the compromise agreement] was not a conceded but a disputed claim; worth, therefore, ordinarily, something less than its face for purposes of sale, transfer, or cancellation; how much less depending upon the continuing solvency of the debtor, and the probability of its successful enforcement, and that upon the underlying facts of the case; and depending also upon the probable extent and expense of the expected litigation." (*Gould v. Cayuga etc. Bank*, 99 N. Y. 333.)  Plaintiffs inveigh strongly against the doctrine of that case, but in our opinion it is correct.

It is also contended that the case is within the rule that one who seeks to rescind a compromise on the ground of fraud is not required to restore the money or other benefits he has received from his adversary, if, whatever might be the result of his action, he would be entitled to keep what he has obtained. Cases of that nature arise when a party has been led by fraudulent contrivance to accept less money than was due him on an undisputed claim, as in *Gilson etc. Co. v. Gilson*, 47 Cal. 597, and in some other instances not necessary to be illustrated now. But in the present case, assuming, as plaintiffs did, that the bar to the action arising from the compromise, settlement and release, was avoided by allegations of fraud in the procurement of the same, then, of course, both parties were relegated to their original situation where plaintiffs asserted and defendant contested the liability of the latter on the policy (*Kley v. Healy*, 149 N. Y. 346); suppose plaintiffs should fail to establish such liability, it would then appear that they had two thousand six hundred and sixty-six dollars and sixty-six cents of defendant's money to which—the compromise under which it was paid being void, and the consideration moving to defendant for such payment, viz., immunity from suit on the policy, having failed —they could show no right, and it seems quite elementary to

say that in such event they could not lawfully keep what they had obtained. It is no answer to say that plaintiffs did prove to the satisfaction of the jury that the policy they surrendered was an enforceable obligation in their favor; or, what is much the same thing, that the judgment, by which the plaintiffs recover only the difference between the face value of the policy and the sum paid by defendant on the compromise, is a sufficient restoration of such payment. These things were problematical until judgment rendered; and to adopt such a test for determining whether restoration was necessary before suit is to say that the plaintiffs could gain their right of action—to wit, of recovery on the policy, which was barred by the compromise—as the result of the action; whereas the settled rule is that the right must exist when a plaintiff commences his action. As remarked by Mr. Bigelow (1 Bigelow on Fraud, 82): "The compromise is a binding contract until rescinded; it is binding then when he brings his suit." And so are Civ. Code, sec. 1566; *Morrison v. Lods,* 39 Cal. 381; *Bohall v. Diller,* 41 Cal. 532; *Herman v. Haffenegger,* 54 Cal. 161; *Wainwright v. Weske,* 82 Cal. 193.

Another contention is that the action may be regarded as one for a rescission of the compromise by judgment of the court, and that in cases of that character no attempt at rescission by the plaintiff himself before suit brought is necessary. Rescission by the court in this case necessarily involved the setting aside of the compromise and cancellation of the release —powers exercisable only by the court in equity and not by a jury (*Mesenburg v. Dunn,* 125 Cal. 222); such jurisdiction of the court below was neither invoked nor exerted, and the judgment is wholly silent touching a rescission; it is therefore erroneous in any aspect. But, aside from considerations arising from the practice at the trial, the complaint 'is insufficient treated as a bill in equity for rescission; it is the law of this state (except under circumstances which, it is believed, we have sufficiently shown do not attend the present case) that the offer to restore what has been received under the contract impeached is a condition precedent to maintaining an action for a judicial rescission, as well as an action founded on the assumption that rescission has been accomplished by simple act of the party. (*Kelley v. Owens,* 120 Cal. 502, citing most of the previous cases

on the subject.)   Plaintiffs lay stress on *Watts v. White*, 13 Cal. 321.   That was a suit between partners—plaintiff seeking to set aside a deed of his interest in partnership property procured by fraud of defendant, and to enforce an accounting. The court said that plaintiff risked his case on the result of the accounting, and since he alleged that a greater sum was due him than he had received for the deed no offer to restore the consideration for the deed was necessary before suit.   We may observe that in such a case the money received by the plaintiff becomes part of the subject of the accounting; in any possible event he has an interest in it, and until the adjustment of the accounts is, it would seem, as much entitled to its possession as the defendant.   Other distinctions might be drawn; as pointed out in a recent text-book, "tender in a case of rescission between parties to the sale of a partner's interest in business stands upon a footing of its own."   (1 Bigelow on Fraud, 426.)   *Watts v. White, supra,* does not aid the plaintiffs' case here.

Some other points made by plaintiffs in this connection do not require special notice.   We must hold that the compromise was a good contract until rescinded, and not having been rescinded when plaintiffs sued it was a bar to the action not removed by the subsequent verdict of the jury or judgment of the court.   (Civ. Code, secs. 1566, 1567, 1689, 1691; *Dobinson v. McDonald,* 92 Cal. 33; *Jurgens v. Insurance Co.,* 114 Cal. 161; *Hill v. Den,* 121 Cal. 42; *Kelley v. Owens,* 120 Cal. 502, and cases cited.   See, also, the following, most of which are quite in point: *Gould v. Cayuga Bank,* 86 N. Y. 75; *Graham v. Meyer,* 99 N. Y. 611; *Yeomans v. Bell,* 151 N. Y. 230; *Potter v. Monmouth Ins. Co.,* 63 Me. 440; *Brown v. Hartford Fire Ins. Co.,* 117 Mass. 479; *Moore v. Massachusetts Ben. Assn.,* 165 Mass. 517; *Ewing v. Brake Shoe Co.,* 169 Mass. 72; *Home Ins. Co. v. Howard,* 111 Ind. 544; *Harkey v. Mechanics' etc. Ins. Co.,* 62 Ark. 274[14]; *Och v. Missouri etc. Ry. Co.,* 130 Mo. 27; Bigelow on Fraud, 82.)   The authorities cited by plaintiffs, so far as pertinent to this question, are in the main distinguishable from the case at bar either for the reason that they treated the release as wholly void, which it cannot be under the statute of

---

[14] 54 Am. St. Rep. 295.

this state, or that the plaintiff suing in disregard of the release had been fraudulently led to compromise an undisputed demand, and so was in any case entitled to keep what he had received. Admitting that there is some conflict of authority, we are yet satisfied that the conclusion we have reached accords with the strong preponderance of adjudication both in this state and elsewhere. The judgment and order denying a new trial should be reversed.

Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

Temple, J., McFarland, J., Henshaw, J.

Rehearing denied.