**L. L. OLDS SEED CO. v. COMMERCIAL UNION ASSURANCE CO., LTD.**
No. 9834.

United States Court of Appeals
Seventh Circuit.
Jan. 27, 1950.

H. O. Wolfe, Milwaukee, Wis., F. Halsey Kraege, Madison, Wis., Wolfe, O'Leary & Kenney, Milwaukee, Wis., for appellant.

Emerson Ela and Walter P. Ela, Madison, Wis., Ela, Christianson & Ela, Madison, Wis., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action against defendant under a standard Wisconsin fire insurance policy. Attached to and as a part of said policy was an extended coverage endorsement affording coverage for damages resulting from the perils of windstorm, hail, explosions, riot, etc. Plaintiff claimed that its stock of seeds and merchandise located in the basement of its premises in Madison, Wisconsin, was damaged by water which had escaped through a ruptured lead water pipe located under the basement floor. Plaintiff offered proof that the break or tear in the water pipe had been caused by a hydraulic phenomenon known as water hammer, which plaintiff claimed constituted an explosion within the meaning of that term in defendant's policy.

At the conclusion of the evidence the district judge denied defendant's motion for a directed verdict, and submitted a special verdict to the jury consisting of the single question: "Was there an explosion on or about the 24th or 25th day of November, 1946, of the lead pipe located beneath the basement floor of the plaintiff's premises?" The jury answered, "Yes." Defendant moved for judgment notwithstanding the verdict, which motion the court denied. Thereafter the court ordered judgment for the plaintiff on the verdict in the stipulated amount of $25,249.01. On this appeal the errors assigned are the failure of the district court to grant defendant's motion for a directed verdict, and the denial of defendant's motion for judgment notwithstanding the verdict.

Plaintiff's building was erected in 1913. There was a 6″ concrete floor in the basement. The city of Madison furnished the water supply through a 2″ lead pipe with a wall thickness of ¼″. The pipe entered plaintiff's basement wall about 3 feet above the floor, then made a downward bend, and was installed under the concrete floor for a distance of 20 feet, and then came up through the floor where it was connected with the water meter.

The janitor of the building had been in the basement on Sunday afternoon and found everything in order. However, when he returned Monday morning, he found water in the basement 4 to 5 feet deep. After the water was pumped out, the floor was dug up, and a jagged-edged break in the water pipe was discovered about 17 feet from the outside wall of the basement, and about 3 feet from the point where the pipe came up through the floor to the meter. The break was 2½″ in length along the longitudinal axis of the pipe and the sides of the break were about ½″ apart at the widest point of separation. The soil had washed away to a considerable extent below the point of rupture.

The usual pressure maintained in the water mains of Madison is from 90 to 93 lbs. per square inch in the daytime and from 75 to 85 lbs. at night. The water has a temperature of about 52° when it is pumped from the wells into the system, and tends to warm slightly in the system but never exceeds 60°. A test made on a section of pipe adjacent to the ruptured section disclosed an ability to withstand pressures up to 272 lbs. per square inch.

Upon this appeal we must accept as a proved fact the claim of the plaintiff that the failure of the water pipe was caused by water hammer. When water is passing through a pipe under pressure and is brought to an abrupt stop by the closing of a valve, periodic surges of kinetic energy are propagated in the water. These surges of energy cause abnormal fluctuations in

pressure and often produce violent concussions on the pipe called water hammer. These concussions are described as making a banging noise. The pressure wave travels through the pipe at a speed of 4,000 feet a second, and may travel several city blocks from the place where the water hammer originated.

Although admitting that the rupture of the pipe may have been caused by water hammer, defendant insists that "rupture" and "explosion" are not synonymous terms. Defendant further asserts that cold water cannot explode, and invites attention to the discussion of elements of an explosion appearing in an opinion by this court in Lever Bros. Co. v. Atlas Assur. Co., Ltd., et al., 7 Cir., 131 F.2d 770. Defendant insists that an explosion has three definite characteristics: first, a release of energy; second, noise; and third, a going away of material from the center of the explosion. Defendant confidently asserts such characteristics were not present when the pipe in plaintiff's basement ruptured.

The insurance policy herein does not define the word, "explosion," but under the heading, "Provisions Applicable Only to Explosion," appears the following: "This Company shall not be liable for loss by explosion, rupture or bursting of steam boilers, steam pipes, steam turbines, steam engines, fly-wheels * * *." Plaintiff argues that under the doctrine of *noscitur a Sociis,* the words "explosion," "rupture" and "bursting" as used in the policy under the heading, "Provisions Applicable Only to Explosion," take on equivalent meanings.

There are various types and degrees of explosions. The word "explosion" is not one that lends itself to a precise definition. As was said in Hartford Fire Ins. Co. v. Empire Coal Min. Co., 10 Cir., 30 F.2d 794, 798, " * * * 'An explosion is hard to define. General characteristics may be described, but the exact facts which constitute what we call an explosion are not susceptible of such statement as would always distinguish such an occurence. * * *' "[1]

In the Lever Bros. case we approved an instruction of the trial court reading in part, "Hence an explosion is an idea of degree, and the meaning of the word in each case must be settled not by any fixed standard or accurate measurement but by the common experiences of men in matters of that sort." 131 F.2d 770, 775.

No exception was taken to the definition of explosion given in the instructions to the jury herein. The trial judge said in part, "It may be defined as a sudden accidental, violent bursting, breaking, or expansion caused by an internal force or pressure which may be and is usually accompanied by some noise."

Counsel for defendant frankly admitted that the bursting of a kernel of popcorn is an explosion, and that had any damage occurred on plaintiff's premises from such an explosion, defendant would have been liable. However, he strongly insisted that plaintiff's damage in no way resulted from an explosion.

The question before us is not what conclusion we would have reached from the evidence had we been members of the jury. We must ascertain whether the record discloses substantial evidence from which, construed most favorably to the plaintiff, reasonable men and women might find that an explosion occurred. Plaintiff must be given the benefit of every legitimate inference from the testimony.

Professor Kessler, a widely known expert in hydraulics, who has specialized in the study of water hammer, testified that in his opinion the pipe in question burst from "a sudden excessive pressure, far greater than the normal pressure in the (water) main," and that the bursting "would be accompanied by a violent increase in pressure, and undoubtedly noise would occur." Another expert testified that in his opinion the pipe burst because of water hammer which is "a very sudden and destructive force of internal pressures—sudden and instant violent pressure."

Defendant's argument that cold water does not explode is beside the point. It was the container, the pipe, that gave way with violence. And it should be kept in mind that the insurance policy did not give pro-

1. Quoting with approval the district judge's instructions to the jury.

tection against big explosions only; the protection afforded was against all explosions, except those specifically excluded. Defendant argues that the break in the pipe was small, but considering that it was only a 2″ pipe, the jagged-edge tear or opening was relatively of considerable size.

We think that under the evidence the question of whether an explosion occured was a jury question. Considering the physical exhibits, such as the ruptured section of the pipe, as well as the oral testimony, it was permissible for the jury to find that an explosion had occurred. Since plaintiff's damages were a direct consequence thereof, the judgment for the plaintiff must be and is affirmed.