**DANIELS et al. v. HARTFORD FIRE INS. CO.**

No. 12506-BH.

United States District Court
S. D. California, C. D.

April 30, 1951.

The determination of the cause of the breaking of the water pipe in question resulted in a battle of the experts. Naturally, the experts for the plaintiffs held that the break was due to internal pressure, while, as expected, the experts for the defendant claimed the break was caused by external stress based upon varying theories.

There are certain facts that convince me the break in the water pipe was due to an explosion or rupture caused by internal pressure. It is undisputed that the thermostat on the hot water heater was defective and that the hot water was brought to an excessive heat over an extended period of time. It is also apparent that the water pipe involved was subjected to great pressure. The breaking of the pipe, the discovery of the overheating and the opening of the faucets all occurred simultaneously. Was the breaking of the water pipe a mere co-incident? I think not. The water pipe broke at its weakest point. How weak the pipe was and what amount of pressure this particular pipe would withstand no one knows.

After considering the entire evidence I am satisfied the breaking of the pipe was the result of an explosion within the terms of the extended coverage rider to the policy.

The insurance contract contained the usual provision requiring the filing of the proofs of loss within sixty days as a condition precedent to any recovery for loss under the policy. The defendant now relies upon a delay in the filing of such proof of loss as a defense to this action.

The loss occurred on December 19, 1949, and the agent Avery was notified on December 21, 1949. The local office of the defendant in Los Angeles first admits hearing of the loss on April 19, 1950, when Avery requested proof of loss forms be sent to the plaintiffs' attorney. This request stimulated a comprehensive investigation of the loss by the defendant, including the hiring of a consulting engineer. The formal proof of loss was received by the defendant at its head office in San Francisco on July 31, 1950. In a letter

Arch E. Ekdale, San Pedro, Cal. and John F. McCarthy, Long Beach, Cal., for plaintiff.

Hindman & Davis, Los Angeles, Cal., for defendant.

HARRISON, District Judge.

Plaintiffs brought this action for a loss which they allege was covered by the extended coverage rider on a fire insurance policy issued by the defendant through its agent.

The amount of the loss is not in dispute.

Two questions of fact are presented to me for decision as follows:

1. Was the loss caused by an explosion within the meaning of the extended coverage rider attached to the insurance policy?

2. Did the insurer waive the requirement of submitting proof of loss within sixty days as provided by the policy?

The facts concerning the explosion feature are somewhat similar to Olds Seed Co. v. Commercial Union Assurance Co., 7 Cir., 179 F.2d 472. The complaint in this action is modeled after the Olds case.

dated August 8, 1950, written by the defendant's attorney, the proofs of loss were formally rejected on the ground that the loss did not result from an insured peril, and also on the ground that the proofs of loss were not made within the required sixty-day period. It will be noted that the defendant never raised the question of late filing until the proofs of loss had been turned over to its legal department. Up to this time the parties had dealt with each other on the sole question of whether the loss was an insured risk.

The plaintiffs contend that the condition requiring the proofs of loss to be filed within sixty days after loss was waived by the insurer.

▆▆▆ The principles of law involved in these opposing contentions are not in dispute. Both parties concede that a delay in the presentation to the insurer of notice and proofs of loss as required by the policy may be waived if the delay is caused by any conduct on the part of the insurer or its authorized agent; that the provision limiting the authority of an agent to waive a condition except by a writing endorsed on the policy does not apply to stipulations to be performed after loss such as the giving of notice and the furnishing of proofs of loss; that in order to effect a waiver by an insurance company in respect of these conditions, the agent by whom such waiver is effected must be acting within the scope of his actual or apparent authority; that a denial of liability by an insurer, or his authorized officer or agent, made within the period prescribed by the policy for the submission of proofs of loss, and based on the ground that the loss is not within the risks assumed under the contract of insurance constitutes a waiver.

▆▆▆ Defendant argues that the agent Avery had no authority to make a denial of liability upon behalf of the defendant in the first place, and that there is no evidence that the agent had sufficient knowledge of the nature of the loss and the basis of the claim upon which to make a denial. Whether a particular agent has the power to waive a condition is a question of fact. Westerfield v. New York Life Ins. Co., 129 Cal. 68, 61 P. 667, 670. The whole course of dealing between the agent and the insured indicates that he was acting within the scope of his apparent authority. The insurer permitted the agent to clothe himself with all the indicia of authority. Avery could solicit business, prepare and accept applications, execute, countersign and deliver policies, and collect premiums. A mere call on the telephone after the loss was suffered enabled Dr. Daniels to increase his coverage on the property. Apparently Avery had the power to renew policies and to make endorsements extending coverage. Manifestly Mr. Avery had authority to consummate contracts of insurance for the defendant. It was a part of his duty to report all losses and claims to the Los Angeles office. The request for proof of loss forms was channeled through him. An insurance company which permits an agent to project himself before the public in this manner will not now be heard to assert that in respect to a denial of liability he was acting outside the scope of his apparent authority.

▆▆▆ I find no greater merit in defendant's contention that the agent did not have sufficient information before him upon which to make an intelligent denial of liability. Mr. Avery's position in this litigation is a delicate one, and one would not expect to find in his testimony any direct statement clearly supporting either party's theory of the facts. If there is any doubt as to the extent or exactness of his knowledge of the nature of the loss or the claimed coverage arising from his conversations with Mr. Wing and Dr. Daniels, it is removed by his testimony concerning his informing Dr. Daniels of the similarity between the facts in this case and those in the Olds Seed Co. case. L. L. Olds Seed Co. v. Commercial, etc., Ins. Co., 7 Cir., 179 F.2d 472. It was Avery who suggested that the claim be made on the basis of this decision. It seems clear to me that Avery was thoroughly aware of the facts relative to the damage suffered by Dr. Daniels and the nature of the claimed coverage.

Since Mr. Avery was acting within the scope of his apparent authority in making the denial of liability, the provision in the policy requiring the furnishing of the proofs of loss within sixty days was waived by the insurer.

Plaintiffs are entitled to judgment as prayed for. Counsel for plaintiffs is directed to submit proposed findings and judgment to me under the rule.