NEW YORK LIFE INSURANCE CO. *v.* MARY E. O'DOM.

[56 South. 379.]

1. LIFE INSURANCE. *Premiums. Waiver of forfeiture. Authority of agent. Provisions of policy. Corporations. Estoppel.*

Where a life insurance policy required premiums to be paid on a fixed date and authorized a month's grace on the payment of all premiums after the first and provided that, except, as to the period of grace, the payment of a premium should not continue the policy in force beyond the date when the next premium was payable, and further provided that no agent was authorized to waive forfeitures, modify contracts, or extend the time for the payment of a premium; and that only certain named officers had power to make or modify any contract of insurance or extend the time for paying premiums, or to waive forfeitures or bind the company. *Held*, that a cashier of a local office of the company who was only authorized to send out notices and deliver official receipts, had no authority to extend the time of payment of premiums beyond the days of grace allowed in the policy, or to receive a quarterly premium after the policy had lapsed.

2. CORPORATIONS. *Agency, how proven.*

An agency for a corporation may be proved, and authority to act for it may be implied as in the case of natural persons, but the burden of proof is on the party seeking to establish the agency.

3. CONTRACTS. *Modification.*

There is no more in an agreement in writing not to agree by parol, than a parol agreement not to agree in writing, and every such agreement is ended by a new one which contradicts it.

4. CORPORATIONS. *Authorized Agent. Estoppel.*

A corporation, through its duly authorized agent, acting within the real or apparent scope of his authority, may be bound and

such agent may waive forfeitures and estop the corporation as a
fraud upon the other contracting party.

5. INSURANCE. *Stipulations of policy.*

An insurance company can stipulate, in any contract executed in
its behalf, that its provisions can be varied by no notice or rep-
resentations not brought home to the actual knowledge of one
of its principal officers.

6. AGENCY. *Extent of authority.*

A stipulation in a policy of insurance that no agent has power to
modify the terms of the contract, or waive its conditions, is
notice to the insured of the limited authority in these respects
and under such a stipulation the insured cannot reply upon any
*actual conduct of the agent as constituting a modification or
waiver.

APPEAL from the circuit court of Lauderdale county.
HON. JNO. L. BUCKLEY, Judge.

Suit by Mrs. Mary E. O'Dom against the New York
Life Insurance Company. From a judgment for plain-
tiff, defendant appeals.

*Longino & Ricketts,* for appellant.

It is beyond question that the law makes no distinction,
as to their interpretation, construction and enforcement
between insurance contracts and any other contracts and
we deem it wholly useless to cite this learned court to the
long list of authorities upholding this general statement.

The policy sued on called for a premium of one hun-
dred and seventy dollars, and eighty-five cents to be paid
not later than February 18, 1910, and declared that un-
less it was paid within the specified time the said policy
should by reason of the nonpayment of such premium
become *ipso facto* void and terminated.

It was indisputably proved and it is now conceded that
the amount of premium called for in the policy contract
was not paid and that there was never any offer to pay
same or any part of it within the required time. Hence,
said policy of insurance of necessity expired with the

18th day of February, 1910, unless the appellant, or some one acting with full authority to bind it in the premises, waived the payment of the required amount within the time stipulated in the policy.

But the appellee does not contend that any such waiver was made directly by the insurance company. She insists only that Wilson, an employee in the appellant's branch office at Jackson, Mississippi, agreed with a son of the insured in the course of hurried conversation by long distance telephone on the evening of the 18th, the last day of grace, that he would accept a quarterly premium payment in lieu of the whole premium required, and that, also, he agreed to extend the time in which the amount so agreed upon could be paid until the 21st day of February, 1910, that being several days after the due date fixed by the policy had passed.

In order then to hold the appellant liable in this case on any agreement or promise which the cashier, Wilson, may have made touching the matters mentioned, the plaintiff must have shown, First: That the said Wilson was an agent who had authority to act for the appellant in making the alleged agreements, or second, that the appellant after full knowledge of his, Wilson's, acts, ratified the same, or third, that the appellant in its course of dealing with the insured, the same being known to Mabry O'Dom, or by its general course of dealing known to the said Mabry O'Dom at the time, misled him, Mabry O'Dom, into the belief that the terms of the policy as to the payment of the premium could be waived by such an agent as Wilson and that the appellant would accept and ratify the acts of said Wilson in the matter, and that the insured, knowing of such agreement acted thereon in making the payment as to the time and amount alleged by the appellee to have been provided for under the terms of the agreement between Wilson and Mabry O'Dom.

We submit that:

On the first of the foregoing proposition there is not a syllable of proof in the record even tending to show that Wilson, the cashier, had primarily, or under the terms of the policy, or within the delegated scope of his authority, any right to make for the appellant such agreement as that contended for by the appellee. The requirements of the policy contract itself are explicit, its procedure direct and the restriction put upon agents definite and positive, viz: "That no agent is authorized to waive forfeitures or to make, modify or discharge the contract or to extend the time of paying a premium." The quoted provision appears in plain type on the face of the policy of insurance itself and the substance of it is repeated in each one of the four or five premium notices sent to the insured. On the facts of this case the rule laid down in the case of *Co-operative Association* v. *McConnico,* 53 Miss. 233, is conclusive and directly against the appellee so far as this proposition is concerned.

On this point, see, also, *Everman* v. *Herndon,* 71 Miss. 823, wherein it was held (p. 380) that, "Nothing is better settled than that one dealing with an agent expressly appointed to do a particular act, must inform himself of the extent of the authority conferred and must see to it that the act done is within the authority."

Under the terms of the policy the cashier could not even have collected the premium for the correct amount within the prescribed time unless he had been previously furnished with a receipt from the home office signed by some one of the executive officers of the company.

There was no ratification by the insurance company of Wilson's alleged agreement with Mabry O'Dom. On the contrary the record shows affirmatively that the company did not, and in the light of the proof could not, know anything about it until after the 18th of February when the policy had lapsed, and that upon the first information about the proposed change in the payments the company promptly repudiated the proposition and

declared the policy forfeited, returning to Mabyr O'Dom the check sent in by him.

"Where agents without express authority assume to act for their principals the latter will be bound if, with knowledge of such assumptions, they acquiesce in and receive the benefits of such acts." *Co-operative Association* v. *McConnico,* 53 Miss. 233.

An agent with full authority may, under many circumstances waive the performance of conditions precedent; but where an unwarranted assumption of authority is shown, the unauthorized waiver by such agent, cannot bind a principal who never heard of or acquiesced in such waiver. Ib.

The acceptance of an overdue premium by an agent does not operate to waive a forfeiture of the policy on account of nonpayment when due, unless the company knew or could have known what he had done, and adopted or ratified his act, or by its conduct estopped itself to insist upon a forfeiture. *Crook* v. *New-York Life Insurance Co.,* 112 Md. 268; see, also, *Baltimore Life Ins. Co.* v. *Howard,* 95 Md. 244.

Mabry O'Dom testified that he had never seen or heard of Wilson, the cashier, prior to their telephone conversation and that he had never had any dealings with the New-York Life Insurance Company except as to his own policy and the one in suit, and that he knew nothing as to their general course of business. He could not, therefore, have been misled by any similar conduct of Wilson or of the appellant in the past and involving any such points as those which came up in the present case.

Thus we submit that nothing developed in the proof on the trial of the case in the court below to supersede or take the consideration of the case outside of the plainly expressed stipulation of the policy. The contract of insurance therefore fixed the rights and duties of the parties to it and the court below should not have allowed said defined rights and duties of the parties to

have been altered, modified, dispensed with or added to by the facts sought to be proved.

There is no better established rule of law than that it is the duty of the courts to construe written contracts; and that when such writings are not forbidden by law and are entered into deliberately by parties competent to contract, it is the duty of the courts to uphold them according to their expressed tenor and effect unless duly waived, which clearly was not done in this case.

We insist, therefore, that the learned judge in the court below erred in refusing to instruct the jury to find for the defendant, as per the first charge asked, rather than to allow the cause to go to the jury on the collateral and immaterial matter shown, which tended to mislead the jury and obscure the real issues involved.

It is not contended that Wilson was a general agent of the appellant with authority to act for it in any general way; his duties as proved were to do certain delegated and specified acts all of which were ministerial and largely clerical. It is therefore, not necessary to consider here what might have been the results in this case if he had been an agent possessing authority to act generally for the appellant.

The court will take notice that the policy carries what is designated and commonly known as term insurance, which according to common knowledge of insurance rules bears a lower premium rate than ordinary life or other high class insurance. We submit, therefore, for the consideration of the court that said policy has an unconditional requirement of a full annual premium in one payment, and not in several amounts, and that it is mandatory therein, with no provision made in the policy for any change in amount or manner of paying the premium —other than the one plainly stipulated. There is no option given in this particular policy to do otherwise than to pay the full annual premium at the time called for (see the policy), and if it be assumed that Wilson, the

cashier, might, under a different form of policy, have changed the requirements from annual to quarterly payments, he could not have done so in this case—where no such option as to the payments was allowed with notice of all these facts.

We respectfully call the court's attention to the very recent case of *Crook* v. *New-York Life Insurance Company,* 112 Maryland 268. An examination of the statement of facts in the Maryland case shows that same questions were raised in that case that are raised by the facts in this case. The decision in the cited case sustains every contention which we here urge on behalf of the appellant.

"The cashier of the local agency of a life insurance company whose home office is in another state has no authority to bind the company by waiving the nonpayment of a premium when due, if the policy provides that a waiver can be made only by certain designated officers." *Crook* v. *N. Y. Life,* 112 Md. 268.

For another case in which it was expressly held, under circumstances like those of this case, that the cashier could not collect premiums after the expiration of the time fixed by the policy and bind the company by his acts, see *Bouton* v. *Am. Mutual Life Ins. Co.,* 25 Conn. Rep. 542. See, also, *Catoir* v. *American Life Ins. Co.,* 33 N. J. 487.

*Baskin & Wilbourn,* for appellee.

We submit that the testimony of Mr. Wilson, the cashier, distinctly shows that he was appointed by the appellant as its agent for the transaction of its business of life insurance in the state of Mississippi; that his appointment was as agent of the company in the larger sense that made him stand for and represent the appellant corporation in dealing with those doing business with it; that all that could be done by the officers of the appellant in the management of its accustomed business

in New York, the so-called home office, was clearly within the scope of Wilson's, the cashier, authority. The company had done more than create him a local agent with limited powers. It had conferred upon him authority which justified any person in dealing with him in regarding him as its general agent and as authorized to waive any conditions of the policy required to be performed by the insured.

As said in the case of *Rivara* v. *Queens Insurance Co.*, 62 Miss. 728: "The powers of insurance agents to bind their companies are varied by the character of the functions they are to perform. Their powers may be limited by the companies in this respect, but parties dealing with them, as to matters within the real or apparent scope of their agency, are not affected by such limitations unless they had notice of the same. An insurance agent clothed with authority to make contracts of insurance or to issue policies stands in the stead of the company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."

This court has decided numerous cases that agencies for a corporation and the powers of such agents are to be understood and interpreted in the same way as agencies and powers of agents of natural persons.

Judge Campbell, speaking for the court in the case of *Cary Lumber Co.* v. *Cain,* 70 Miss. 628, says: "Agency for a corporation may be proved, and authority to act for it may be implied as in cases of natural person." And this declaration by this eminent judge is approved in the case of *Brown* v. *Mortgage Co.,* 85 Miss. 397.

We also have this same idea, that corporations can be bound as natural persons can be bound by express or implied powers, cogently and logically set forth by Chief

Justice Whitfield, a no less distinguished judge than Mr. Justice Campbell, as shown by his very able opinion in the case of *Rivers* v. *Yazoo & Miss. Valley Railroad Co.*, 90 Miss. 196, also in a recent case decided by him, *Metzger* v. *Southern Bank,* M. S. Opinion, No. 14597, where many authorities are cited, and where the agency of a cashier was under discussion. We think that his remarks that the learned counsel in this case (meaning Metzger case) laid too great a stress upon a naked technical power and failed to look at the real power and authority in its full scope which the evidence in said case, plainly showed the said cashier in that case had; holding in said case that the evidence manifestly showed that he was the general agent of the said Southern Bank.

We also call the court's attention to the case of *Phoenix Insurance Co.* v. *Bowdre,* 67 Miss. 620.

The appellant's position is that no agent is authorized to waive forfeiture, make, modify or discharge contracts or extend time of paying premium, because it is so stated in the policy, and the learned counsel undertaking to be loyal to his client directed much of his examination and his instruction to the jury upon this proposition, we submit, cannot be sustained in view of the declaration of the courts of Mississippi which we find reported in our Mississippi Reports. Beginning with the case of *New Orleans Ins. Co.* v. *Matthew,* 65 Miss. 312, it is declared by our court that "there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it."

This language is quoted from a Michigan case and was fully approved in the Matthews case, and other cases subsequent thereto, with which this court is familiar.

The error into which appellant fell, was in the failure to recognize that a stipulation limiting the authority of an agent has no application within the law, which declares a waiver by estoppel because of the acts of the

company through its agents. Such estoppels do not rest upon the power or lack of power of an agent to change the provisions of a policy or waive any of its agreements, but arises because of the acts of the company through its agent acting within the scope of his apparent power as its representative. And this is especially true where the conduct of the agent misleads those dealing with him, as in the instant case, and thereby prevent persons so dealing with him from doing that which the policy requires to do in order to secure his rights. And the further proposition of law that an insurer will be bound by statements and acts of its agents within the apparent scope of their employment unless limitations on their authority are brought to the knowledge of the assured or those representing the assured.

We desire to call the court's attention to the case of *James* v. *Mutual Reserve Fund Life Association,* which is a decision by the supreme court of the state of Missouri, rendered on December 8, 1898, and which is found in 49 So. Rep., page 978 (148 Mo. 12).

Discussing this James case, the court further states as follows:

"In the case at bar the receipts for premiums provided on their face that they should not be valid unless countersigned by the agent in Kansas City. This policy was negotiated and issued by the agent in Kansas City. All of the premiums were paid to him. All of the dealings of the insured and of the plaintiff were with him. He must, therefore, be regarded as the *alter ego* of the company, and what he did was the same as if the company was present, acting for itself."

In the instant case the Jackson Branch Office sent out all notices countersigned by Wilson, cashier; collected all premiums; performed all the duties and had jurisdiction of all the matters pertaining to a very large portion of the state of Mississippi.

It is further said in the James case that "even though it is also conditioned that agents cannot waive forfeitures, and even though the policy provided that the receiving overdue premiums is merely an act of courtesy, the prompt payment of the premiums is for the benefit of the insurer, and may be waived or suspended by it or its agents in express terms, or by its course of dealing with the insured," citing on page 980, cases from New Jersey, New York, Connecticut, North Carolina, Kentucky and Illinois, and some text-books, declaring after said citations, that "the question of waiver is, like any other fact in the case, essentially a matter for the jury."

This opinion is in harmony with the opinions of our court and in harmony with right and justice, as ably and admirably set forth by Judge Whitfield, speaking for our supreme court in the recent case of *London Guarantee Accident Co.* v. *Miss. Central R. R. Co.,* 52 So. Rep., 787. The insurance company in this case undertaking to defend under the terms of the policy as against said claim, because the said policy contained the provision that without the written consent of the insurance company, the railroad company, appellee in said case, could not settle any loss and reimburse itself as against the insurance company without said written consent. The said insurance company also contending that there could be no parol waiver of a written stipulation, and hence said insurance company was not liable. Judge Whitfield, speaking for the court, responded by saying that "at least five express decisions, to-wit, the case of *Insurance Co.* v. *Gibson,* 72 Miss. 58; *Sheffy case,* 71 Miss. 919; *Matthews case,* 65 Miss. 301; *Rivara case,* 62 Miss. 727, and *Bowdre case,* 67 Miss. 631, had definitely put at rest this contention." That the matter may not again be presented to us after all the definite settlements we state here what was said in the *Gibson case, supra,* which said learned judge proceeded to do, as shown on page 788, of 52 So. Rep., *supra.* Not only citing various decisions of

our own court but also numerous authorities from other states.

Argued orally by *A. H. Longino,* for appellant, and *R. E. Wilbourn,* for appellee.

McLEAN, J., delivered the opinion of the court.

This is a suit on a policy of insurance, issued by the appellant on the 26th day of January, 1909, insuring the life of appellee's husband, John W. O'Dom, in the sum of five thousand dollars. John W. O'Dom died on the 20th day of February, 1910, and, payment having been refused by the insurance company, this suit was brought upon this policy. This policy is what is known as a "term policy." It was to run for ten years, provided, of course, the annual premiums were promptly paid. At the end of ten years it was to expire by virtue of its own limitation. The annual premiums amounted to one hundred and seventy dollars and eighty-five cents, and were to be paid on or before the 18th day of January of each year. It was provided, however, in the policy, as follows: "A grace of one month, subject to an interest charge of five per cent per annum, shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force." By the terms of the policy all premiums became payable in advance at the home office, or to an agent of the company upon the delivery, on or before the due date of the premium, of a receipt, signed by an executive officer of the company and countersigned by such agent. The policy further provides that, "except as to the period of grace herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable," and, further, that "no agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a pre-

mium." The second full premium of one hundred and seventy dollars and eighty-five cents became due January 18, 1910, as called for by the policy. On December 28, 1909, the company gave written notice to the insured, which was received by him, and in this notice the attention of the insured was called to the due date of the premium, and he was notified that the amount would have to be paid, as fixed by the policy, at the home office of the company in New York, or to the cashier of the Jackson branch office, "in exchange for the company's official receipt, signed by an executive officer and countersigned by an agent to whom the premium was to be paid," and further, that, "unless paid in the manner directed, the policy would become forfeited." The insured was further informed by the company that "only the president, a vice-president, a second vice-president, a secretary, or the treasurer has power, on behalf of the company, to make or modify any contract of insurance, or to extend the time for paying the premium, or to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information." It was further shown that on January 23, 1910, the insured was further notified by the company of his failure to pay his premium on the 18th of January, and again had notice that the policy required payment of the full premium and of the interest thereon from its due date, on or before February 18, 1910, and was again informed that the company could not waive any of the conditions of the policy contract. Again, on February 3, 1910, the company directed, by mail, the attention of the insured to the fact that the said premium had not been paid, and that the period within which it could be received, with interest, would end February 18, 1910; and, further, that none of the terms of the policy could be waived, and still again, on February 13, 1910, another notice, which was the fourth notice, was mailed to the insured, again stating that February 18th was the

last day of grace, and, further, that none of the terms of the policy could be waived. All of these notices were promptly received by the insured, and the premium was not paid, and the insured, John W. O'Dom, died on February 20, 1910. Upon the establishment of these facts the insurance company contended on the trial, and still insists, that the warranties of the policy were broken by the insured, and that under the terms of the contract the insurance was not in force at the death of the insured, and, consequently, it, the defendant, was not liable.

The contention of the plaintiff is that the insurance company waived the requirements of the contract, which called for the full annual premium on or before the 18th day of February, 1910, and, further, that the defendant agreed with the insured that it would accept a quarterly premium on the 21st of February, or the 18th of February, in lieu of the whole amount within the time called for by the policy. At the same time, when this policy was issued, there was also issued to M. A. O'Dom, the son of John W. O'Dom, another insurance policy of similar tenor, the annual premium for which was the total of the two premiums, with interest, being two hundred and sixty-four dollars and forty cents, one-fourth of which would be sixty-six dollars and ten cents. In order to support the contention of the plaintiff in the court below, Mr. M. A. O'Dom testified that he represented his father; that he went to Meridian on the 17th day of February, 1910, just a day before the thirty days of grace expired, to try to dispose of some lumber in order to pay the premiums. He failed to dispose of the lumber, but he met one Col. Townsend, who was a mere soliciting agent of the company and he (Townsend) suggested that the witness write to the Jackson branch office relative to an extension of the premiums. Thereupon this witness, M. A. O'Dom, wrote a letter, dated February 17, 1910, addressed to M. V. Flood, manager of the Jackson branch of the company, as follows: "Dear Sir: Please

notice that the premium on my policy No. 4117962, and my father's, J. W. O'Dom, policy No. 4117961, is due to-morrow, February 18th. Kindly hold receipt for the two premiums for ten or fifteen days, as we are not in position to remit you to-day and don't want the policies to lapse. You will greatly oblige us by granting this extension of ten or fifteen days from tomorrow, the 18th instant, and we will appreciate an advice to this effect. Thanking you in advance for an early reply, etc., M. A. O'Dom." M. A. O'Dom further testified: That it was his intention to convert some lumber that he had into money, if his request in said letter was denied, and forward said premiums on the next day, February 18th. That in response to said letter to Mr. Flood, A. C. Wilson, cashier of the Jackson branch of appellant's business at Jackson, called said witness over the long-distance telephone, said witness being at the time at West King Junction, in Wayne county, some six miles from the railroad. Mr. Wilson, the cashier of the branch office at Jackson, on February 18th, told the witness that it would be impossible for him to hold receipts for ten or fifteen days, as was requested by him in his letter, but if he, the witness, was not in position to send the whole premium on the two policies, to send him a check for the quarterly premium, and gave the witness the amount of sixty-six dollars and ten cents, which sixty-six dollars and ten cents would cover the amount as charged under the provisions of the policy during the grace of one month. The witness replied to Wilson, the cashier, saying that he was in the woods at West King Junction, but would go to Waynesboro, his home, the next day or two, and asked him how it would do if the witness would send check on the 20th and date the check as of the 18th, and date the letter inclosing said check on the same day. The cashier, Wilson, said it would be all right, and he, the witness, said he would have the check at the branch office of the company at Jackson by the 21st day of Feb-

ruary, 1910. Having thus been assured by the cashier, Mr. M. A. O'Dom, acting for himself and his father, went to Waynesboro, his home, on the 20th day of February, and sent in the next mail, and on February 20th, a check, which was drawn by the Wetherbee-Huggins Company on the First National Bank of Meridian, Mississippi for sixty-six dollars and ten cents, dated February 18, 1910, payable to the order of M. A. O'Dom, and by said payee indorsed to the order of the New York Life Insurance Company. This check was received by the said Wilson at Jackson, Mississippi, on the 21st day of February. Mr. Wilson's version of this conversation over the phone differs from Mr. O'Dom's, in that he denies that he stated to Mr. O'Dom that he could date the check back. He says that he told Mr. O'Dom that it must be mailed by the 18th of February, and, further, that he, Wilson, would send some additional papers to Mr. O'Dom for his signature, changing the payment of premiums from annually to quarterly. Mr. Wilson admits that these papers were never sent to be signed, while Mr. O'Dom denies that there was ever anything said about Mr. Wilson sending him any papers to be signed.

In view of the fact that this case was submitted to a jury, and that the findings of the jury were against the insurance company, we are bound to consider this case as if the testimony of Mr. O'Dom were true. The evidence of Mr. O'Dom further shows that the assured, John W. O'Dom, was sick on Sunday, the 20th day of February, and had been sick for a week or more; that there was no apprehension on the part of any member of his family that he was seriously sick; that the assured died on Sunday night, February 2t0h, at 8:30 o'clock. After the death of the assured the testimony shows that the soliciting agent of the company, Mr. Townsend, applied to the Jackson branch office, at Jackson, for blank proofs of death, and that Wilson, the cashier, forwarded the said Townsend blank proofs; the said Wilson hav-

ing sent the check to the home office at New York. After
the death of the assured, Mr. M. A. O'Dom went to Jack-
son and there saw Mr. Wilson, the cashier, who referred
to the conversation with the witness, O'Dom, and stated
to him that under the peculiar circumstances of the case
he had forwarded the check to the home office at New
York for action by the company. After this Mr. O'Dom,
representing the appellee, gave notice to the home office
of the death of the assured, requesting blank proofs of
death to be forwarded to him. The home office of the
company, in answer to Mr. O'Dom's application for blank
proofs of death, declined to furnish the blank proofs, as-
signing as a reason that the provisions of the policy had
been violated, because the premiums were not received
on or before the 18th day of February, 1910, nor until
after the said policy had lapsed because of nonpayment
of the premiums, because the check was not for the sum
called for as the premiums on said policies, and that
each of said policies—that is, the one in favor of the
witness, M. A. O'Dom, and that one in favor of his
father, John W. O'Dom—had both lapsed for the non-
payment of the January 18th premiums. Said letter was
dated February 26, 1910. It was also stated in said
letter that the Jackson branch was not authorized to
receive the premiums called for, if not paid on or before
the 18th day of February, and that the said office was
not authorized to receive any sum whatever after the
18th day of February; also called attention of the wit-
ness O'Dom to that provision in the policy, as follows:
"No agent is authorized to waive forfeitures, or make,
modify, or discharge contracts, or extend the time of
paying the premium." Said letter was signed by the
vice-president of the appellant, and returned the check of
sixty-six dollars and ten cents, which the vice-president
in said letter advised had been sent by the Jackson branch
to his (or the home) office.

Mr. Wilson, the cashier of the company testified upon cross-examination that he was under bond to the New York Life Insurance Company as cashier at the branch office at Jackson; this bond was filed with the company at its home office; the said home office employed him, appointed him to the position of cashier, and gave him written instructions; that these written instructions were at the Jackson office and were not produced at the trial. The witness Wilson also testified that there was an assistant cashier in the office, who worked under his supervision; that he also had two book-keepers, and he had charge of the bookkeepers; he also had two stenographers under his supervision, and that the said Wilson had charge of the entire office force, all of whom were employed by the New York Life Insurance Company, but said force was under his (Wilson's) supervision and his direction, and that he was the only cashier in the state of Mississippi—that is, the only one having an office in the state; that there was also a branch office at Memphis, Tenn., and one at New Orleans, La.; that the Jackson branch office included, and had jurisdiction over, all the counties in Mississippi, except seventeen counties in the northern part of the state, which were under the supervision of the Memphis branch office, and four counties on the coast, under the supervision of the New Orleans branch office; that he (Wilson) was authorized to receive premiums; that he was authorized to make collection of premiums and delivery of receipts to the policy holders within counties of the Jackson branch district; that the receipts for the collection of premiums were sent to the Jackson branch office, to be countersigned by him as cashier, before the same could be delivered to the policy holders; that all of said receipts for premiums had to be countersigned by him, unless he authorized some clerk in the office to sign his name to said receipts; that the notices relative to the payment of premiums were mailed from the Jackson branch office.

The witness Wilson further stated that Mr. Flood had nothing to do with the collection of premiums, that his duties were entirely distinct from that of the witness; that the letter written February 17th, by Mr. O'Dom to Mr. Flood, was received and turned over by Mr. Flood, for the reason that Mr. Flood had nothing to do with that matter, and because he had full jurisdiction of that matter; and that in undertaking to answer the letter he called Mr. O'Dom over the long-distance phone and had a conversation about the matter. The witness Wilson stated, further, that he had never sent any papers to Mr. O'Dom to change from an annual to a quarterly premium, either on his policy or that of his father. This witness also stated that another part of his duties was to receive the original policies from the company, have a record made of them, and then send them to the soliciting agent, to be delivered by the soliciting agent to the policy holder; that the policy in suit has upon it the words "Jackson Br." stamped on the back of the policy; that it was put there in typewriting by the home office, and that it was on there when the policy was received at Jackson; and that the letters "Br." after the word "Jackson," written on the policy, stand for "Branch.' Another duty of said Wilson, cashier, was to keep up with the policy holders, to send them notices not to let their policies lapse, and that he sent the notices to Mr. J. W. O'Dom of date January 23, 1910, February 3, and February 13, 1910. These notices are the regular stock form, furnished him by the home office for use in the Jackson, Mississippi, branch office; that he (Wilson) is the person designated by the insurance company to send said notices, and that he is the person referred to as cashier; and that the witness Wilson is the agent that is designated to countersign the receipts in this case, and the only agent for all the counties in the jurisdiction of the Jackson branch office, and countersigned said receipts.

We have thus in extenso set out the testimony showing the powers and duties of the Jackson branch office, and in so doing we have accepted the statement of facts as we find them in the brief of counsel for appellee, as the counsel for appellee has fully stated the facts as shown by the record, and left out of the statement nothing that is of material benefit to his client.

It will thus be seen from this statement of facts that the only question which is presented in this record is whether Wilson, the cashier, had any power or authority to waive a forfeiture, and whether the insured was misled by Wilson, and, if so, was the company in any way estopped by the acts or declarations of Wilson, the cashier. The contention of appellee is that the stipulation in the policy, "No agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or extend the time of paying the premium," is void, and Wilson, the cashier of the company, had such powers and duties as authorized him to waive the forfeitures; in other words, that Wilson was the alter ego of the company.

The fallacy lurking beneath the position of appellee is as dangerous and deceptive as it is open and glaring. It consists in assuming that the cashier of the Jackson branch was a general agent of the company; that, because he had the power to collect premiums, be also had the power to extend the time of payment; and that he could waive the forfeiture and modify or change the contract of insurance. There is no provision in the policy which gives the insured the right to change the premium from annual to quarterly. We have made a very careful and exhaustive investigation of this question, have not only read all of the authorities relied upon by the appellee, but others, and fail to find any authority which sustains her contention.

Appellee invokes the settled doctrine in this and other courts: First, that " an agency for a corporation may

be proved, and authority to act for it may be implied, as in the case of natural persons,'' and, second, that ''there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and that every such agreement is ended by the new one which contradicts it.'' Both of these propositions are well settled in an unbroken line of authorities in this state, beginning with *Insurance Company v. Sheffy,* 71 Miss. 919, 16 South. 307, and extending to *L. G. Accident Co.* v. *M. C. R. R. Co.,* 52 South. 789, decided as late as 1910, and these enunciations are in perfect harmony and accord with all of the recent and well-considered cases of other courts. It is also equally well settled that a corporation, through its duly authorized agent, acting within the real or apparent scope of his authority may be bound, and, that the agent may waive forfeitures and estop the corporation, so as to prevent the principal from setting up a defense which would operate as a fraud upon the other contracting parties. Indeed, such is elementary. It rests, and is bottomed upon, the principle that the agent is the *alter ego,* and what the principle himself can do he can do through another. But the question presented in the case at bar goes directly to the authority of the agent—that is, was he acting within the real or apparent scope of his power, so as to bind his principal; and, second, can the appellee claim, under the facts of this case, that the acts of the agent estopped the insurance company and precludes it from repudiating those acts? In order to determine this question, we must look, first, to the power and authority conferred upon the agent, and his conduct, and also what right the appellee had to rely upon this conduct.

It is urged with learning and ability, both in the oral argument and written brief of appellee, that these facts shown in evidence establish the power of the agent, and that the appellee had the right to rely upon the state-

ment and the conduct of the agent, and that to now hold otherwise would be a fraud upon appellee. The evidence shows that one Flood was the agent of the insurance company (as to what were his duties, and what were his powers, the record is silent); that on February 17th M. A. O'Dom, on behalf of himself and his father, mailed a letter, addressed to Flood, in which he stated that the premiums were due on the following day, and requesting an extension for ten or fifteen days. On the following day Wilson, the cashier of the appellant, called him (O'Dom) over the long-distance phone, and the conversation was had as detailed in the first part of this opinion. The evidence further shows that Wilson had authority to collect the premium and to deliver the official receipts for premiums, that in the Jackson branch office all of the policies issued by the appellant, to persons living within certain territory, were registered, and that all the premiums upon those policies could be paid to Wilson, and that the official receipts for these premiums were forwarded by the company to Wilson. There is no evidence at all which either directly or indirectly, remotely or otherwise, shows that either Wilson, or any other person connected with the Jackson office, has any authority to issue policies of insurance, or to make any contract of insurance, or to extend the time of payment of any premium, or to change or to modify any contract, or that any custom or course of dealing had existed in any way conferring any such power upon him or any other person connected with the Jackson branch, unless such power can be inferred from the evidence above stated.

The burden of proof is upon him who asserts it to show either a direct authorization of the agent, or by proving such facts or circumstances, or such a course of conduct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority. If one invests another with real authority, he

is bound by reason of the actual power conferred. If, however, he clothes him with apparent authority, he is bound, because he has induced others to deal with him as an agent. The one rests upon a fact; the other upon a supposed fact. But before the alleged principal is precluded from denying the existence of the supposed fact, it is necessary that the other party should show that he was misled, not by the alleged agent, but by the principal. An analytical examination of the adjudged cases will show that such is the predicate upon which such conclusions are drawn. Another principle is that, although one person has apparent, as contradistinguished from real, authority to act for another, yet if third persons dealing with an agent know, or in contemplation of law are charged with knowledge, that such person was not authorized to do or to perform the particular act, then such third persons cannot be heard to say that such agent was acting within the scope of his authority.

An examination of the authorities, in the light of the above principles, will doubtless reconcile the seemingly conflicting conclusions of the various courts. The Mississippi cases relied upon by appellee are: *Rivara's case,* 62 Miss. 728; *Bowdre's case,* 67 Miss. 620, 7 South. 596, 19 Am. St. Rep. 326; *Sheffy's case,* 71 Miss. 919, 16 South. 307; *Gibson's case,* 72 Miss. 58, 17 South. 13. An examination of these cases will disclose that in each and all of them the question as to the authority of the agent arose upon the policies of insurance, the essential parts of which were agreed upon by the agent, who had full power to issue policies and to conclude contracts, without having to refer them to their principles. An agent who is empowered to issue policies and to make contracts of insurance is the general agent of the company, and, being a general agent, can waive conditions and forfeitures, and do any other thing which his principal can do. The cases outside of this state relied upon by appellee are cases easily distinguishable from the case

at bar.   Most of them are cases where the agent was the general agent of the company, or where, by the conduct of the parties and the custom and the course of business, the insured had the right to rely upon the acts and statements of the agent, and the conclusions in some instances are based upon the statute, which makes the party receiving or collecting premiums the general agent of the company.

After a thorough examination of the authorities, we have been unable to find any case, except the James case, 148 Mo. 1, 49 S. W. 978, and the *Fallows case,* 110 Tenn. 720, 77 S. W. 937, which holds that an agent, having simply the authority to collect premiums, had the power to waive forfeitures, where the policy, as in this case, provides that "no agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a premium."   But even in the *James case* and *Fallows case, supra,* it will be seen that in both of these cases the course of business and the custom had been such as to justify the parties in believing that the agent had the authority to extend the time of payment.   Such had been done before and the acts of the agent ratified by the company.   But if we be mistaken as to the ruling in *Fallows' case,* 110 Tenn. 720, 77 S. W. 937, this case is squarely overruled in *Archer* v. *N. Y. L. Ins. Co.,* MS. opinion, delivered November, 1910, assenting to *Crook* v. *Insurance Co.,* 112 Md. 268, 75 Atl. 388.   In all the cases relied upon by appellee there can be found general expressions which will justify the conclusions that an agent, authorized to receive and receipt for premiums, is such an agent as clothes him with power to extend the time of payment; but this general language must be construed and interpreted by referring to the facts as shown in each particular case.   The difficulty is not so much in making general statements of the law, but applying them to a certain state of facts, and the power of agents to bind their principals is varied by

the character of the functions which they are employed to perform.

Turning, now, from the authorities relied upon by appellee, we find that the best-considered and the decided weight of authority is that a mere collecting agent has no power to vary, alter, or modify a contract of insurance, or to extend the time of payment, especially where the notice of the agent's authority is brought home to the other party. This court, in *Insurance Co.* v. *Sorsby*, 60 Miss. 14, has squarely decided the proposition. In that case the policy prescribed that if any other insurance was taken upon the property, without the consent of the insurance company, the policy would be void. After the issuance of the policy, additional insurance was taken out by the insured upon the property. (This was a fire policy.) The insured claimed that the conditions of the policy were waived by Bracy, the agent of the company. Bracy was a soliciting agent. He forwarded the applications to the general manager. The policy was returned to Bracy, who delivered the same to the insured and collected and receipted for the premiums. The proof was that the insured, when he applied to Bracy, informed him that he intended to take out addition insurance, and that after he had taken out the additional insurance he informed Bracy, the agent, and that Bracy said that it was all right. This court, speaking through its then distinguished Chief Justice Campbell, said: "It was not within his real or apparent authority to make contracts with the company. He was not authorized to issue policies, or alter the terms of those issued by the company. His information of Sorsby's purpose to obtain other insurance was not imputable to the company, and his express consent to it did not in any way affect the company."

The recent case of *Crook* v. *New York Life Insurance Co.*, 112 Md. 268, 75 Atl. 388, is a case on all fours with the case at bar. The policy in that case contained the

identical provisions that the policy under consideration contains, and the local agency had the identical power and authority which Wilson, in this case had. In that case it was held that the cashier of the local agency of the life insurance company, whose home office is in another state, has no power to bind the company by waiving the nonpayment of premium when due, if the policy provides that the waiver can be made only by certain designated officers, and, further, that the acceptance by the local agent of an overdue premium does not operate to waive a forfeiture of the policy on account of nonpayment when due, unless the company knew, or could have known, what he had done, and adopted or ratified his act, or by its conduct estopped itself to insist upon forfeiture. In Cooley's Briefs on the Law of Insurance, vol. 3, p. 2486, it is stated that "an insurance agent, who is only authorized to collect and forward premiums, does not have the power to waive conditions in the policy or forfeitures arising out of breaches thereof." In Cyc. 860, we find a correct statement of the law on this subject, as follows: "A waiver by an officer or a general agent is binding on the company, but ordinarily a mere soliciting agent or collecting agent does not have the authority to waive conditions of the policy. The agent intrusted with the making of the contract may waive conditions affecting its validity and also for forfeiture of the policies."

An examination of the authorities cited by this author bears out the correctness of the statement. In *Iowa Life Insurance Co.* v. *Lewis,* 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204, *et seq.,* it is held that "the authority of the agent of an insurance company to waive a forfeiture, which had accrued by reason of nonpayment of a premium note at maturity, cannot be inferred from an act of the company in sending such note to the agent for collecting the same some time before it was due, especially where his contract with the company and provi-

sions of the policy prohibited the exercise of such au-
thority." The representations, declarations, or acts of
an agent, contrary to the terms of the policy will not be
sufficient, unless sanctioned by the company. *Phoenix
Mutual Insurance Co.* v. *Doster,* 106 U. S. 33, 1 Sup. Ct.
18, 27 L. Ed. 65. There is nothing in this record which
in any way shows a ratification by the company, or that
the course of business, or any custom upon the part of
the agent, known to the company, had previously existed.
It is needless to pursue this investigation along this line
any further, as the decided weight of authority is that an
agent, with limited powers like Wilson, had no authority
to extend the time of payment.

The appellee relies upon *London Guarantee & Acci-
dent Co.* v. *Mississippi Central R. R. Co.,* decided by this
court June, 1910, and reported in 52 South. 787 *et seq.,*
for authority sustaining appellee's position, with the pro-
vision in the policy to the effect that "no agent, etc.,
can waive a forfeiture or extend the time of payment."
The provision in the Accident Company's case, which
this court held unavailing, was a very different one from
the provision in this policy. The stipulation in the one
case was that "no officer, no agent, and no other repre-
sentative shall waive," etc. This stipulation brought
forth from the court the expression that "this clause is a
species of refinement, by which the corporation with-
draws within its invisible and intangible ideality, when
liability is sought to be imposed upon it, bound by the
acts of no agent, officer, or other representative," and
for that reason held that the stipulation was too broad
and comprehensive in its terms, and at the same time
referring to the distinction which was the foundation of
*Cleaver's case* in 65 Mich. 527, 32 N. W. 660, 8 Am. St.
Rep. 908, as contradistinguished from the case of *Insur-
ance Co.* v. *Earle,* 33 Mich. 143. This court in the *Acci-
dent Co. case, supra,* expressly approved the decision in
Cleaver's case.

We affirm with emphasis all that was said in *L. G. Accident Co.* v. *M. C. R. R. Co., supra,* and at the same time hold that the stipulation in the policy in the instant case is reasonable and valid. The distinction between the two provisions is a broad as the bounding seas. The one attempts to prohibit the waiver or modification of any of the provisions of the policy by any one in either earth or sky or sea. The broad and sweeping provision nullifies itself. The other limits the power to the executive officers, or the general agents of the company. Such a provision is eminently wise and salutary on the part of the company, so as to protect itself from the improvident, unwarranted, or fraudulent statements and conduct of agents who possess mere clerical power, and who perform duties that are purely perfunctory, and at the same time safeguards and protects the rights of the insured, in that it gives him notice what officers and agents of the company he can safely deal with in the event he should desire a modification or alteration of the contract, or any extension of the time as to the payment of premiums.

We see no reason why a corporation, which necessarily contracts through agents, but may have agents of superior or inferior authority, should not stipulate, in any contract executed in its behalf, that its provisions can be varied by no notice or representations not brought home to the actual knowledge of one of its principal officers, nor any waiver not authorized by them. The stipulation in the policy that "no agent has power to modify the terms of the contract, or waive its conditions, is notice to the insured of the limited authority in these respects, and under such a stipulation the insured cannot rely upon any actual conduct of the agent as constituting a modification or waiver." Such is the statement of the rules as laid down in 25 Cyc. 861, and such is the generally accepted rule, especially in Connecticut, Maryland, Massachusetts, Michigan, New Jersey, New York,

Ohio, Pennsylvania, Virginia, Washington, and the United States Supreme Court. As a general proposition it may be said that limitations on the powers of agents, with respect to waivers, are valid and binding on the insured, if he has knowledge thereof. That the insured in this case had knowledge of these limitations cannot be questioned, for the reason that the policy itself specifically provides that "no agent is authorized to waive forfeitures, etc., or to extend the time of payment." And in addition to this provision in the policy, the several notices given to the insured in this case, four in number, admonished and advised the insured that "only the president, a vice-president, a second vice-president, a secretary, or treasurer has power, on behalf of the company, to make or modify any contract of insurance or to extend the time for the paying a premium, or to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information." The unbroken line of authorities is to the effect that a provision like this in the policy is notice to the insured, and that he is bound by it. *Insurance Co.* v. *Sorsby,* 60 Miss. 303; *Cleaver* v. *Traders' Insurance Co.,* 65 Mich. 527, 32 N. W. 660, 8 Am. St. Rep. 908; *Crook* v. *New York Life Insurance Co.,* 112 Md. 268, 75 Atl. 388; Cooley's Briefs on the Law of Insurance, vol. 3, p. 2509; *Westerfeld* v. *New York Life Insurance Co.,* 129 Cal. 68, 58 Pac. 92, 61 Pac. 667; *Porter* v. *Friendly Society,* 114 Ga. 937, 41 S. E. 45; *Dimick* v. *Metropolitan Life Insurance Co.,* 69 N. J. Law, 384, 55 Atl. 291, 62 L. R. A. 774; *Ruggles* v. *Am. Cent. Ins. Co.,* 114 N. Y. 415, 21 N. E. 1000, 11 Am. St. Rep. 674; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 531, 6 Sup. Ct. 837, 29 L. Ed. 934; *Ins Co.* v. *Gibbons,* 43 Kan. 15, 22 Pac. 1010, 19 Am. St. Rep. 122, *et ubique.*

If, therefore, the insured had notice that only the general agents or officers of the company had power to grant the extension of time, how can he be heard to say that

he was misled or prejudiced by dealing with Wilson, whose duties are merely clerical, and limited, administrative, and not executive? It was his duty to ascertain the authority of the person with whom he was negotiating, or else take his chances on a ratification by the company. Insurance companies must have some efficient means of enforcing punctuality in the payment of premiums. Their contracts may provide for the forfeiture of a policy upon the default of the prompt payment of the premium. If they are not allowed to enforce this forfeiture, they are deprived of a means which they have reserved by the contract of compelling the parties insured to meet their engagements. The provision for the release of the company from liability on the policy of the insured, to pay the premium when due, is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the insured in the making punctual payment of the premiums, is to destroy the very contract of life insurance itself. Our sympathy with the appellee cannot change our conception of the right. The law in its stately steppings, and in its onward march for the establishment, enforcement, and maintenance of justice, cannot be swerved from the path of duty by the hardships of individual cases. It is only by a rigid adherence to the rules of law that we find safety to life, liberty, or property. The weak and the poor are more interested in its enforcement than are the strong and the wealthy. The latter can generally protect themselves; and it is just as essential now that the law should be obeyed as in the days of old, when, amid the thunders and lightnings of Sinai, the tablets of stone, upon which were written the injunctions of the Almighty, were delivered to the children of Israel.

*Reversed and remanded.*